IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 24-cv-01425-NYW-SBP

LUKE WALMSLEY,

    Plaintiff,

v.

CURTIS JOHNSON, in his official capacity as Sheriff of Boulder County, Colorado, and JACK MARKLING, in his individual capacity,

    Defendants.

## ORDER ON MOTION TO DISMISS

This matter is before the Court on Defendants' Motion to Dismiss (the "Motion" or "Motion to Dismiss"). [Doc. 15, filed August 26, 2024]. The Court has reviewed the Motion and the related briefing, the applicable case law, and the entire docket. For the reasons herein, the Motion to Dismiss is respectfully **GRANTED in part** and **DENIED in part**.

## BACKGROUND

These facts are taken from the Complaint, [Doc. 1],[1] and are presumed true for purposes of this Order. On May 22, 2022, Plaintiff Luke Walmsley ("Plaintiff" or "Mr. Walmsley") was booked into the Boulder County Jail (or "BJC"). [*Id.* at ¶ 9]. During intake, he completed a medical screening form and indicated that he had a medical condition that caused him to have seizures and faint. [*Id.* at ¶¶ 9–11]. In response to a question asking Plaintiff to identify his prescription medications, Plaintiff wrote "Walgreens" and

---

[1] When quoting directly from the Complaint, the Court omits all emphasis without further note.

"POTS," which stands for "postural orthostatic tachycardia syndrome" and is a "medical condition that causes [loss of consciousness] and seizure-like activity." [*Id.* at ¶¶ 1 n.1, 13]. This was consistent with three prior reports by Plaintiff of his POTS diagnosis to BJC staff. [*Id.* at ¶ 27]. A nurse "dictated" a medical screening for Mr. Walmsley and noted Plaintiff's report of his POTS diagnosis and medication. [*Id.* at ¶¶ 14–15]. Mr. Walmsley did not know the name of his medication and stated that "someone [would] bring it for him." [*Id.* at ¶ 15]. Mr. Walmsley was never given his POTS medication. [*Id.* at ¶ 16].

At about noon that day, Defendant Jack Markling, a nurse at the Boulder County Jail ("Nurse Markling"), responded to Mr. Walmsley's location after a report that he had had a seizure. [*Id.* at ¶ 17]. Mr. Walmsley reported to Nurse Markling that he had been vomiting all day, that he felt dehydrated, and that he thought his condition might lead to another seizure. [*Id.* at ¶ 20]. Nurse Markling documented that Mr. Walmsley "did not present with any indications that he was postictal besides being mildly tremulous,"[2] but Plaintiff alleges that being mildly tremulous "is entirely consistent with seizure-like activity caused by" POTS. [*Id.* at ¶ 21]. Nurse Markling provided Plaintiff Pepto-Bismol but "did nothing in response to Mr. Walmsley's reported seizure activity or dehydration." [*Id.* at ¶ 22].

The next day, jail medical staff responded to a report that Plaintiff was having a seizure and called an ambulance upon discovering that he had suffered a head injury. [*Id.* at ¶¶ 23, 26]. Mr. Walmsley was subsequently diagnosed with an intracranial brain hemorrhage, which required emergency surgery, an extended stay in the ICU, and out-

---

[2] For contextual purposes only, courts have recognized that "postictal" "means occurring after a seizure or sudden attack." *Flanery v. Chater*, 112 F.3d 346, 349 n.9 (8th Cir. 1997).

2

patient therapy treatment. [*Id.* at ¶¶ 30–31]. Plaintiff's head injury left him with memory loss and problems with balance and prevented him from returning to his prior employment. [*Id.* at ¶¶ 32–33].

Plaintiff alleges that there are no records showing that Nurse Markling or anyone at the Boulder County Jail looked into Mr. Walmsley's medical history between the May 22 seizure and the May 23 seizure; ordered or provided medication to Mr. Walmsley; or even requested to view Mr. Walmsley's medication or medication history. [*Id.* at ¶¶ 28–29].

Mr. Walmsley initiated this lawsuit on May 21, 2024 against Nurse Markling and Curtis Johnson, the Sheriff of Boulder County, Colorado.[3] *See* [*id.* at 1]. He asserts two claims: one claim of "deliberate indifference" under 42 U.S.C. § 1983 against Nurse Markling, [*id.* at 6], and the other alleging an "inadequate healthcare delivery system" against Boulder County, [*id.* at 7]. Defendants move to dismiss both claims. [Doc. 15].[4] The Motion is fully briefed and ripe for disposition. *See* [Doc. 16; Doc. 20].

---

[3] Sheriff Johnson is sued in his official capacity. *See* [Doc. 1 at 1]. "Suing individual defendants in their official capacities under § 1983 . . . is essentially another way of pleading an action against the county or municipality they represent." *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010). Accordingly, when discussing Plaintiff's claim against Sheriff Johnson in his official capacity, the Court refers to the applicable Defendant as "Boulder County."

[4] Defendants attach Plaintiff's "chart notes" to their Motion to Dismiss. *See* [Doc. 15-1]. In deciding a motion to dismiss under Rule 12(b)(6), the Court's review is typically limited to the contents of the complaint. *Cuervo v. Sorenson*, 112 F.4th 1307, 1312 (10th Cir. 2024). However, courts may also consider extraneous documents if they are referenced in the complaint, central to the plaintiff's claims, and indisputably authentic. *Id.* The chart notes are referenced in the Complaint, *see* [Doc. 1 at ¶ 21], and appear to be relevant to Plaintiff's claims. However, after review of all of the applicable filings, the Court concludes that it need not rely on the chart notes to rule on the Motion to Dismiss.

3

**LEGAL STANDARD**

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quotation omitted). The plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).

**ANALYSIS**

**I.   Deliberate Indifference Claim**

It is well-settled that "[a] prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). "Those same constitutional protections apply to pretrial detainees . . . through the Fourteenth Amendment's Due Process Clause." *Paugh v. Uintah Cnty.*, 47 F.4th 1139, 1153–54 (10th Cir. 2022).

Despite being represented by counsel since the inception of this action, Mr. Walmsley does not specify under which constitutional amendment his § 1983 claims are brought. *See* [Doc. 1 at 6–7]. Defendants contend that Plaintiff's claims are based on his time as a pretrial detainee, which means that the Fourteenth Amendment governs his claims.[5] [Doc. 15 at 5]. However, Plaintiff does not clearly allege that he was a pretrial

---

[5] The Eighth Amendment governs claims for deliberate indifference by inmates post-

4

detainee in his Complaint, *see generally* [Doc. 1], and in his Response to the Motion to Dismiss, Plaintiff does not acknowledge Defendant's assertion that he was a pretrial detainee or clarify the constitutional basis of his claims, *see generally* [Doc. 16].  This lack of clarity, however, does not preclude the Court from deciding the Motion to Dismiss because courts "apply the same deliberate indifference standard no matter which amendment provides the constitutional basis for the claim." *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020).

The deliberate indifference standard has an "objective" component and a "subjective" component.  *Burke v. Regalado*, 935 F.3d 960, 992 (10th Cir. 2019).  The objective component requires the plaintiff to allege objective facts establishing that the constitutional deprivation was "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  "A medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Sealock*, 218 F.3d at 1209 (quotation omitted).  "Where the necessity for treatment would not be obvious to a lay person, the medical judgment of the physician, even if grossly negligent, is not subject to second-guessing in the guise of an Eighth [or Fourteenth] Amendment claim." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005).

The subjective component requires allegations that the jail official knew that the detainee faced a substantial risk of harm *and* also that the jail official disregarded that risk.  *Burke*, 935 F.3d at 992.  In other words, an official cannot be liable for failing to

---

conviction.  *See Est. of Angelo v. Bd. of Cnty. Comm'rs of Jefferson Cnty.*, No. 23-cv-01607-CNS-STV, 2024 WL 2274080, at *5 (D. Colo. May 20, 2024).

5

address a risk of which he is unaware, nor can an official be liable if he takes reasonable steps to alleviate the risk.  *Est. of Burgaz ex rel. Zommer v. Bd. of Cnty. Comm'rs for Jefferson Cnty.*, 30 F.4th 1181, 1186 (10th Cir. 2022).  "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."  *Farmer*, 511 U.S. at 842 (citations omitted).

Defendants' well-developed arguments are limited to the subjective prong.  *See* [Doc. 15 at 6–9].[6]  They contend that Plaintiff's allegations demonstrate that Nurse Markling acted reasonably, as he assessed Mr. Walmsley and provided care to address Plaintiff's symptoms as he observed them.  [*Id.* at 6–7].  They argue that Plaintiff's claim suggests only a difference of opinion in the proper course of treatment, which cannot form the basis of a cognizable deliberate indifference claim.  [*Id.* at 7].  In addition, insofar as the claim is based on a failure to provide Plaintiff his POTS medication, Defendants assert that the claim fails because (1) Plaintiff does not allege that Nurse Markling personally

---

[6] Defendants do argue, in a footnote, that "being tremulous can be due to a number of different, common reasons and [Mr.] Walmsley does not allege that this symptom rose to the level of an objectively serious medical condition."  [Doc. 15 at 6 n.2].  This argument is insufficient to adequately present this issue to the Court.  First, "[a]rguments raised in a perfunctory manner, such as in a footnote, are waived."  *United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002) (en banc).  Second, crediting Defendants' assertion that Plaintiff's symptoms could be attributed to "a number of different, common reasons" would require the Court to consider information outside of the pleadings and view the allegations in Defendants' favor, both of which the Court cannot do.  *Casanova*, 595 F.3d at 1124; *Cuervo v. Sorenson*, 112 F.4th 1307, 1312 (10th Cir. 2024).

In their Reply, Defendants provide a more developed argument attacking Plaintiff's showing on the objective prong.  *See* [Doc. 20 at 1–2].  However, this argument could have been raised in Defendants' Motion in the first instance, and the Court declines to consider an argument that is meaningfully raised for the first time in a reply brief.  *White v. Chafin*, 862 F.3d 1065, 1067 & n.1 (10th Cir. 2017).

participated in any failure to provide medication; and (2) the allegations are otherwise insufficient because Nurse Markling acted reasonably. [*Id.* at 8–9]. And finally, Defendants argue that because Plaintiff fails to allege a plausible constitutional violation of clearly established law, Nurse Markling is entitled to qualified immunity. [Doc. 15 at 9–10].

Mr. Walmsley counters that Nurse Markling's response to and treatment of his *nausea* does not mean that Nurse Markling reasonably treated his risk of *seizure*. [Doc. 16 at 6]. He contends that Nurse Markling's treatment was "grossly inadequate" because Nurse Markling "never addressed Mr. Walmsley's seizure." [*Id.* at 5]. Then, he argues that Defendants fail to challenge his deliberate indifference claim insofar as it is based on a gatekeeper theory, so this portion of the claim must survive. [*Id.* at 6–9].

"[T]he subjective component can be satisfied under two theories: failure to properly treat a serious medical condition ('failure to properly treat theory') or as a gatekeeper who prevents an inmate from receiving treatment or denies access to someone capable of evaluating the inmate's need for treatment ('gatekeeper theory')." *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1137 (10th Cir. 2023). Plaintiff's deliberate indifference claim invokes both theories. *See* [Doc. 1 at ¶ 39 (referencing Nurse Markling's "failure to provide adequate medical care"); *id.* at ¶ 38 (alleging that Nurse Markling did not "serve as an adequate gatekeeper")]. The Court addresses both theories below.

***Failure to Properly Treat.*** As mentioned above, the subjective component requires allegations that the defendant knew there was a substantial risk of harm and that the defendant disregarded that risk "by failing to take reasonable measures to abate it."

7

*Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006) (quotation omitted). As an initial matter, "[d]isagreement with a doctor's particular method of treatment, without more, does not rise to the level of [a Fourteenth] Amendment violation." *Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010). But even if a detainee receives *some* medical care, the detainee may still state a plausible deliberate indifference claim by alleging that he received "woefully inadequate treatment" in custody. *Smith v. Allbaugh*, 987 F.3d 905, 911 (10th Cir. 2021). This is a high bar; the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") has instructed that courts should consider "whether there was the functional equivalent of a complete denial of care in light of the specific circumstances." *Lucas*, 58 F.4th at 1139; *see, e.g.*, *id.* at 1141 (allegations that the plaintiff's Leukocytosis, E. coli infection, and vaginal discharge and bleeding were treated with Tylenol sufficiently alleged "woefully inadequate" treatment); *Oxendine v. Kaplan*, 241 F.3d 1272, 1279 (10th Cir. 2001) (allegations that doctor treated gangrenous tissue by providing only pain medication were sufficient to meet requirements of the subjective component).

Even taking the well-pleaded allegations as true and drawing all reasonable inferences in Plaintiff's favor, the Court respectfully agrees with Defendants that Plaintiff's allegations are insufficient to plausibly allege that Nurse Markling knew that Plaintiff faced a substantial risk of harm and consciously disregarded that risk. *Burke*, 935 F.3d at 992. Plaintiff alleges that he reported to Nurse Markling that he had been vomiting, was dehydrated, and that he suspected he might have a seizure due to his dehydration. [Doc. 1 at ¶¶ 17, 20]. Nurse Markling provided medicine to treat the vomiting, but he did not check Plaintiff's medical history or provide any treatment or medication for the reported seizure activity. [*Id.* at ¶¶ 22, 28]. But the Complaint provides an explanation for this

8

choice: Nurse Markling documented in his notes that Plaintiff "did not present with any indications that he was postictal besides being mildly tremulous." [*Id.* at ¶ 21]. In other words, the allegations show that Nurse Markling assessed Plaintiff's concerns and noted them, but apparently did not share them.

The Court cannot second-guess Nurse Markling's assessment of Plaintiff's symptoms or treatment decisions with the benefit of hindsight or substitute its judgment for the medical judgment of Nurse Markling. *Est. of Beauford v. Mesa Cnty.*, 35 F.4th 1248, 1271 (10th Cir. 2022). "[T]he subjective component is not satisfied, absent an extraordinary degree of neglect, where a [provider] merely exercises his considered medical judgment." *Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006). Courts within this Circuit have concluded that assessing symptoms and determining the proper course of treatment are matters of medical judgment. *See, e.g., id.* at 1234; *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992); *Sherman v. Klenke*, No. 11-cv-03091-PAB-CBS, 2013 WL 1283835, at *2 (D. Colo. Mar. 28, 2013). And Plaintiff's allegations respectfully do not rise to the level of "extraordinary . . . neglect" required for the Court to conclude that they meet the high threshold of a constitutional violation. *See Self*, 439 F.3d at 1232. *Compare* [Doc. 1 at ¶¶ 17–22], *with Est. of Taylor v. Denver Health & Hosp. Auth.*, No. 23-cv-02355-CNS-KAS, 2024 WL 3874954, at *12 (D. Colo. Aug. 20, 2024) (finding allegations sufficient where the plaintiff alleged that he was regularly vomiting and soiling himself; had chest pains, high blood pressure, and difficulty breathing; and had blue hands and feet, but that the defendant doctor treated him only with anti-nausea medication *even though* the doctor "knew that anti-nausea medication could not cure or treat [the plaintiff's] underlying conditions").

Plaintiff's allegation that his mildly tremulous state was "entirely consistent with seizure-like activity caused by" POTS, [Doc. 1 at ¶ 21], does not change the Court's conclusion. Tenth Circuit precedent "is clear" that "'a misdiagnosis, even if rising to the level of medical malpractice, is simply insufficient . . . to satisfy the subjective component of a deliberate indifference claim.'" *Strain*, 977 F.3d at 996 (quoting *Self*, 439 F.3d at 1234); *see also Self*, 439 F.3d at 1235 (physician's "failure to connect-the-dots" was insufficient to establish a culpable state of mind). The allegations concerning Nurse Markling's assessment of Plaintiff's symptoms, even if that assessment was erroneous, do not plausibly state a constitutional claim. *See Sealock*, 218 F.3d at 1208, 1211 (nurse who misdiagnosed inmate's chest pain as the flu, when it was actually a symptom of a heart attack, was not deliberately indifferent); *Crowson v. Washington Cnty. Utah*, 983 F.3d 1166, 1181 (10th Cir. 2020) (nurse who misdiagnosed plaintiff with drug or alcohol withdrawal was not deliberately indifferent); *cf. Est. of Beauford*, 35 F.4th at 1274 (at summary judgment, concluding that nurse was not deliberately indifferent where she "believed [the inmate's] seizure had resolved and [the inmate] was no longer in medical distress").

For these reasons, the Court respectfully agrees with Defendants that Plaintiff does not allege facts sufficient to satisfy the subjective component of the deliberate indifference claim based on a failure to properly treat. And because the Court has concluded that Plaintiff fails to state a claim on this theory, it need not address Defendants' qualified immunity argument. *See Phillips v. Bell*, 365 F. App'x 133, 143 (10th Cir. 2010) ("Having determined [the] claims are insufficient to state a claim for relief . . ., we need not address the issue of qualified immunity."). Insofar as Plaintiff's

10

deliberate indifference claim is based on a failure-to-treat theory, the Motion to Dismiss is respectfully **GRANTED**.

*Gatekeeper Theory.*  A person who serves as a "gatekeeper for other medical personnel capable of treating the condition" may be unconstitutionally deliberately indifferent "if she delays or refuses to fulfill that gatekeeper role." *Self*, 439 F.3d at 1232 (quotation omitted).  "[I]t is possible to have some medical care and still state a claim under the gatekeeper theory." *Lucas*, 58 F.4th at 1137.  This is because "[t]he inquiry under a gatekeeper theory is not whether the prison official provided *some care* but rather whether they fulfilled their sole obligation to refer or otherwise afford access to medical personnel capable of evaluating a patient's treatment needs when such an obligation arises." *Id.*

Plaintiff alleges that Nurse Markling failed to "serve as an adequate gatekeeper by elevating the circumstance to a higher-level provider who was qualified to assess and diagnosis [sic] Mr. Walmsley's serious medical needs." [Doc. 1 at ¶ 38].  As noted by Plaintiff, although Defendants request dismissal of Plaintiff's "claims," *see* [Doc. 15 at 1], they do not challenge the sufficiency of the deliberate indifference claim under the gatekeeper theory, *see generally* [*id.*].  Indeed, even Defendants' qualified immunity argument is limited to Plaintiff's failure-to-treat theory.  *See* [*id.* at 10 ("No Tenth Circuit or Supreme Court case has stated that a plaintiff is entitled to a particular response to a medical call . . . [or] that a nurse violates a Constitutional right when they do not obtain non-urgent, unidentified medication that an inmate has himself stated he will obtain and have someone bring to the Jail.")].  The Court cannot construct arguments on Defendants' behalf or assess the sufficiency of Plaintiff's allegations on this theory sua sponte.  *Lebahn*

11

*v. Owens*, 813 F.3d 1300, 1308 (10th Cir. 2016).  Thus, to the extent the Motion seeks dismissal of the gatekeeper-theory portion of Plaintiff's claim, it is respectfully **DENIED**.

## II.      "Inadequate Healthcare Delivery System" Claim

Mr. Walmsley's second claim is titled "Inadequate Healthcare Delivery System" and is asserted against Boulder County.  [Doc. 1 at 7].  Plaintiff alleges that Boulder County "failed to provide adequate medical care through its adoption, ratification, and enforcement of a healthcare delivery system that" did not adequately respond to Plaintiff's medical needs and that this failure caused Plaintiff's injuries.  [*Id.* at ¶¶ 43–44].

"[A] municipality may not be held liable under § 1983 solely because it employs a tortfeasor."  *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997).  Government entities can be sued directly only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978).  "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  *Id.* at 694.

To succeed on a municipal liability claim, a plaintiff must prove that "(1) an official policy or custom (2) caused the plaintiff's constitutional injury and (3) that the municipality enacted or maintained that policy with deliberate indifference to the risk of that injury occurring."  *George ex rel. Bradshaw v. Beaver Cnty. ex rel. Beaver Cnty. Bd. of Comm'rs*, 32 F.4th 1246, 1253 (10th Cir. 2022).  An official policy or custom under *Monell* may take several forms, including:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (cleaned up). It is Plaintiff's burden to identify a municipal custom or policy that caused his injuries. *Brown*, 520 U.S. at 403.

Defendants argue that Plaintiff's *Monell* claim should be dismissed because he fails to identify any official policy or custom that was the moving force behind Plaintiff's injuries. [Doc. 15 at 11].[7] According to Defendants, Plaintiff's "only allegation concerning an official policy or custom is based on Boulder County's post-incident ratification of Nurse Markling's behavior," and "basic principles of linear time" preclude a finding that conduct that occurs *after* an alleged constitutional violation could have caused that constitutional violation. [*Id.* (cleaned up)]. They argue that Plaintiff's allegations are insufficient to state a *Monell* claim. [*Id.*].

Mr. Walmsley responds that "post-incident evidence" of ratification "is not [intended] to show *causation*, but to show evidence of an existing policy or practice." [Doc. 16 at 12]; *see also Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009) (rejecting a *Monell* claim based on post-incident ratification because "basic princip[les] of

---

[7] Defendants first argue that dismissal is appropriate because "there is no underlying Constitutional violation by Nurse Markling." [Doc. 15 at 11]. Because the Court has already declined to dismiss the gatekeeper portion of Plaintiff's deliberate indifference claim, the Court respectfully disagrees with this argument and does not address it further.

13

linear time prevent us from seeing how conduct that occurs *after* the alleged violation could have somehow caused that violation"). Plaintiff argues that there are *two* types of ratification that "can give rise to liability":  first, "pre-incident ratification of a particular course of conduct," and second, "post-incident ratification of conduct being [sic] 'consistent with' existing policy or practice."  [Doc. 16 at 12]. He explains that his claim against Boulder County is based on the second type of ratification. In essence, he argues that Boulder County's post-incident approval of Nurse Markling's conduct shows that Nurse Markling's conduct was consistent with an existing—but unidentified—Boulder County policy or custom. [*Id.* at 12–13]. Plaintiff's argument is not supported by any binding, on-point authority. See [*id.*].

The Court is respectfully unpersuaded by Plaintiff's argument. The Court will assume without deciding that Plaintiff is correct that post-incident ratification may circumstantially demonstrate that a municipal employee acted in accordance with an already existing municipal policy or custom. *See, e.g.*, *Est. of Lobato ex rel. Montoya v. Correct Care Sols., LLC*, No. 15-cv-02718-PAB-STV, 2017 WL 1197295, at *9 (D. Colo. Mar. 31, 2017) (stating that "some after-the-fact conduct could theoretically provide evidence of a policy"); *Paris v. Carrocia*, No. 4:22-cv-00235-TCK-JFJ, 2023 WL 1971317, at *5 (N.D. Okla. Feb. 13, 2023) ("[P]ost hoc ratification of unconstitutional conduct by a final policymaker . . . is circumstantial evidence that a municipality followed a constitutionally deficient policy."). Even so, Plaintiff's present allegations are insufficient to state a plausible *Monell* claim.

First, as Defendants point out, Plaintiff does not allege the existence of any identifiable policy or custom that he contends was the moving force behind the alleged

14

constitutional violation.  *See generally* [Doc. 1].  At best, he vaguely references "written policies or unwritten customs" and "Boulder County's policies and customs," without actually explaining *what the alleged policies and customs were*.[8]  *See* [*id.* at ¶¶ 40–41].  This deficiency is compounded by the fact that, although Plaintiff disclaims the type of *Monell* claim he does *not* assert, *see* [Doc. 16 at 12–13], he never actually clarifies what type of municipal policy his *Monell* claim is based on—i.e., an official policy statement, a widespread informal custom, the decision of a final policy maker, or a failure to train.  *See generally* [Doc. 1]; *Bryson*, 627 F.3d at 788.  Each of these different *Monell* theories has unique pleading requirements.  *See, e.g.*, *Hernandez v. City & Cnty. of Denver*, No. 21-cv-01538-PAB-MEH, 2022 WL 3597452, at *5–6 (D. Colo. Aug. 23, 2022) (explaining that, to adequately allege an informal custom or practice, plaintiffs typically plead facts showing a pattern of similar instances of misconduct); *Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1250 (10th Cir. 1999) (affirming dismissal of claim based on final policymaker theory because the plaintiff did not allege that the individuals in question had final policymaking authority).  Plaintiff's failure to clearly set forth his theory of relief gives Defendants neither "fair notice" of the claim nor "the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quotation omitted).

Moreover, Plaintiff's limited allegations supporting his claim lack the factual

---

[8] Plaintiff's allegation that Boulder County employed a healthcare system that "failed to provide continuity of care," "failed to adequately respond to Mr. Walmsley's serious medical needs when he suffered serious complications," and "failed to elevate Mr. Walmsley's care to a provider qualified to adequately diagnose and respond to Mr. Walmsley's serious medical needs," *see* [Doc. 1 at ¶ 43], describes alleged deficiencies in Boulder County's health system, not any identifiable policy or practice that Nurse Markling allegedly acted in accordance with.  Indeed, Plaintiff does not use the word "policy" or "practice" at all in this paragraph.  *See* [*id.*].

specificity required by the Federal Rules of Civil Procedure.  "An allegation is conclusory where it states an inference without stating underlying facts or is devoid of any factual enhancement."  *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021).  Plaintiff's allegations do just that.  For example, Plaintiff alleges that "Boulder County ratified the actions of [Nurse] Markling as being consistent with Boulder County's policies and customs."  [Doc. 1 at ¶ 41].  He does not allege, however, *who* allegedly ratified Nurse Markling's behavior on behalf of Boulder County or *how* or *when* they ratified the conduct.  *See* [*id.*].  "Ratification is more than acquiescence," *Erickson v. City of Lakewood*, 489 F. Supp. 3d 1192, 1207 (D. Colo. 2020) (quotation omitted), and Plaintiff's cursory, unsupported allegation need not be taken as true, *see VDARE Found. v. City of Colo. Springs*, 11 F.4th 1151, 1159 (10th Cir. 2021) (courts "need not accept conclusory allegations without supporting factual averments" (quotation omitted)).  Similarly, the statement that "Boulder County's post-incident ratification . . . is sufficient to establish that Boulder County's policies and customs were the moving force behind the injuries and damages suffered by Mr. Walmsley," [Doc. 1 at ¶ 42], is nothing more than a legal conclusion that need not be accepted as true, *VDARE Found.*, 11 F.4th at 1173.

"[A]t the pleading stage, the existence of a *Monell* policy is a 'conclusion' to be built up to, rather than a 'fact' to be baldly asserted."  *Erickson*, 489 F. Supp. 3d at 1206 (quoting *Griego v. City of Albuquerque*, 100 F. Supp. 3d 1192, 1215 (D.N.M. 2015)).  Plaintiff cannot survive the Motion to Dismiss "by identifying a single incident of alleged violations and then, without any further factual substantiation, contending that such actions were consistent with and caused by a municipal policy [or] procedure."  *Salazar v. Castillo*, No. 12-cv-01481-JLK, 2013 WL 69154, at *6 (D. Colo. Jan. 7, 2013).  Rather,

16

Plaintiff must "include *facts* from which [the Court] may reasonably infer the defendant's liability." *Frey v. Town of Jackson*, 41 F.4th 1223, 1232 (10th Cir. 2022) (emphasis added). Plaintiff's Complaint does not meet this minimum threshold.

Accordingly, the Court respectfully **GRANTS** the Motion to Dismiss with respect to the claim against Boulder County, and that claim is **DISMISSED without prejudice**.

### CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

(1) Defendants' Motion to Dismiss [Doc. 15] is **GRANTED in part** and **DENIED in part**; and

(2) Plaintiff's deliberate indifference claim is **DISMISSED without prejudice** to the extent it is based on a failure to adequately treat. Plaintiff's *Monell* claim is **DISMISSED without prejudice** in its entirety.

DATED: January 3, 2025

BY THE COURT:

_____
Nina Y. Wang
United States District Judge

17